UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DARRIN BARDIN,                                       No. 2:17-cv-0963 DB

        Plaintiff,

        v.                                               ORDER

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

        Defendant.

      This social security action was submitted to the court without oral argument for ruling on

plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment.[1]

Plaintiff's motion argues that the Administrative Law Judge's treatment of the medical opinion

evidence and plaintiff's subjective testimony constituted error.  For the reasons explained below,

plaintiff's motion is granted, the decision of the Commissioner of Social Security

("Commissioner") is reversed, and the matter is remanded for further proceedings consistent with

this order.

////

////

---

[1]  Both parties have previously consented to Magistrate Judge jurisdiction over this action
pursuant to 28 U.S.C. § 636(c).  (See ECF Nos. 7 & 14.)

PROCEDURAL BACKGROUND

On November 16, 2015, plaintiff filed an application for Disability Insurance Benefits

("DIB") under Title II of the Social Security Act ("the Act"), alleging disability beginning on

September 11, 2015. (Transcript ("Tr.") at 17, 175, 293-97.) Plaintiff's alleged impairments

included fibromyalgia, borderline personality disorder, sleep apnea, and neuropathy. (Id. at 157-

58.) Plaintiff's application was denied initially, (id. at 203-09), and upon reconsideration. (Id. at

211-17.) Plaintiff requested an administrative hearing and a hearing was held before an

Administrative Law Judge ("ALJ") on September 23, 2016.[2] (Id. at 46-115.) Plaintiff was

represented by an attorney and testified at the administrative hearing. (Id. at 46-48.)

In a decision issued on November 16, 2016, the ALJ found that plaintiff was not disabled.

(Id. at 39.) The ALJ entered the following findings:

> 1. The claimant meets the insured status requirements of the Social
> Security Act through December 31, 2019.
>
> 2. The claimant has not engaged in substantial gainful activity
> since September 11, 2015, the alleged onset date (20 CFR 404.1571
> *et seq*.).
>
> 3. The claimant has the following severe impairments:
> hypertension, obesity, depression, anxiety, personality disorder,
> osteoarthritis, fibromyalgia, sleep related breathing disorder and
> mild neuropathy of lower extremities (20 CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of
> impairments that meets or medically equals the severity of one of
> the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1
> (20 CFR 404.1520(d), 404.1525, and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned
> finds that the claimant has the residual functional capacity to
> perform light work as defined in 20 CFR 404.1567(b). The
> claimant can lift, carry, push, and/or pull twenty pounds
> occasionally and ten pounds frequently. He can sit for six hours in
> an eight-hour workday. He can stand and/or walk for six hours in
> an eight-hour workday. He can frequently operate foot controls.
> The claimant can frequently climb ramps and stairs, but can never
> climb ladders, ropes, or scaffolds. He can frequently balance,
> crouch, or crawl. He can occasionally kneel. He can never work at
> unprotected heights or around moving machinery. He can never

---

[2] An administrative hearing was held on July 26, 2016. (Tr. at 116.) The ALJ who presided over that hearing, however, later recused herself and a subsequent hearing was held on September 23, 2016. (Id. at 48.)

operate a vehicle in the performance of a job. He must avoid work at extreme cold and heat like that associated with industrial freezers or a blast furnace. He can perform simple, routine tasks and make simple, routine work-related decisions. The claimant can frequently interact with supervisors and coworkers and can never interact with the public. He can tolerate few changes in job duties and job functions.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on January 16, 1979 and was 36 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy (20 CFR 404.1569, 404.1569(a) and 404.1568(d)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from September 11, 2015, through the date of this decision (20 CFR 404.1520(g)).

(Id. at 19-38.)

On March 8, 2017, the Appeals Council denied plaintiff's request for review of the ALJ's November 16, 2016 decision. (Id. at 1-4.) Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on May 7, 2017. (ECF. No. 1.)

LEGAL STANDARD

"The district court reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158-59 (9th Cir. 2012). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

3

1    "[A] reviewing court must consider the entire record as a whole and may not affirm

2    simply by isolating a 'specific quantum of supporting evidence.'" Robbins v. Soc. Sec. Admin.,

3    466 F.3d 880, 882 (9th Cir. 2006) (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir.

4    1989)).  If, however, "the record considered as a whole can reasonably support either affirming or

5    reversing the Commissioner's decision, we must affirm." McCartey v. Massanari,  298 F.3d

6    1072, 1075 (9th Cir. 2002).

7         A five-step evaluation process is used to determine whether a claimant is disabled. 20

8    C.F.R. § 404.1520; see also Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  The five-step

9    process has been summarized as follows:

10               Step one:  Is the claimant engaging in substantial gainful activity?  If
                 so, the claimant is found not disabled.  If not, proceed to step two.
11

12               Step two:  Does the claimant have a "severe" impairment?  If so,
                 proceed to step three.  If not, then a finding of not disabled is
13               appropriate.

14               Step three:  Does the claimant's impairment or combination of
                 impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404,
                 Subpt. P, App. 1?  If so, the claimant is automatically determined
15               disabled.  If not, proceed to step four.

16               Step four:  Is the claimant capable of performing his past work?  If
                 so, the claimant is not disabled. If not, proceed to step five.
17

18               Step five:  Does the claimant have the residual functional capacity to
                 perform any other work?  If so, the claimant is not disabled.  If not,
                 the claimant is disabled.
19

20   Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

21        The claimant bears the burden of proof in the first four steps of the sequential evaluation

22   process.  Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987).  The Commissioner bears the burden

23   if the sequential evaluation process proceeds to step five.  Id.; Tackett v. Apfel, 180 F.3d 1094,

24   1098 (9th Cir. 1999).

25                                      APPLICATION

26        Plaintiff's pending motion argues that the ALJ committed the following two principal

27   errors: (1) the ALJ's treatment of the medical opinion evidence constituted error; (2) and the

28   ////

                                              4

ALJ's treatment of the subjective testimony constituted error.[3] (Pl.'s MSJ (ECF No. 18) at 12-35.[4])

I.      Medical Opinion Evidence

        The weight to be given to medical opinions in Social Security disability cases depends in part on whether the opinions are proffered by treating, examining, or nonexamining health professionals. Lester, 81 F.3d at 830; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant . . . ." Lester, 81 F.3d at 830. This is so because a treating doctor is employed to cure and has a greater opportunity to know and observe the patient as an individual. Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990).

        The uncontradicted opinion of a treating or examining physician may be rejected only for clear and convincing reasons, while the opinion of a treating or examining physician that is controverted by another doctor may be rejected only for specific and legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830-31. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." (Id. at 831.) Finally, although a treating physician's opinion is generally entitled to significant weight, "'[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'" Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) (quoting Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009)).

////

////

_____

[3] The court has reordered, and reorganized, plaintiff's claims for purposes of clarity and efficiency.

[4] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

A.    Use of a Cane

On January 16, 2016, plaintiff's treating physician prescribed plaintiff a walker.  (Tr. at 1756.)  On January 28, 2016, non-examining physician Shanu Kotax, M.D., opined that plaintiff "needs [a] cane for long distances and uneven terrain."  (Id. at 169.)  On March 29, 2016, non-examining physician "Dr. F. Wilson" opined that plaintiff "requires a cane for ambulation."  (Id. at 34.)

On July 12, 2016, plaintiff was examined by Dr. Jonathan Schwartz, M.D.  (Id. at 1338.)  Plaintiff appeared at the examination using a cane.  (Id. at 1339.)  In relevant part, Dr. Schwartz's examination found that plaintiff had "decreased sensation lower extremities."  (Id. at 1341.)  Dr. Schwartz's functional assessment found—again in relevant part—that plaintiff "uses a cane, which is medically necessary based on objective exam findings of decreased sensation involving the lower extremities, for long distances and all terrain."  (Id.)

The ALJ, however, rejected these physicians' opinions, stating:

> The undersigned finds evidence dated after (Dr. Schwartz's) exam does not support the (sic) claimant requires a cane.  The claimant was examined by two neurologist on three occasions and neither found deficits requiring use of a cane.  Moreover, objective testing, i.e. electrodiagnostic testing was negative in the lower extremities.  Thus despite that he was prescribed a cane and a walker, objective tests do not support these are required.  Moreover, he was observed by mental health care treating sources on many occasions not using a cane.  Notably, neurologist, Dr. Chen examined the claimant in April 2016 and found "no clear objective issues based on objective test results."  Dr. Chen had no treatment to offer.  According (sic), the undersigned finds Dr. Schwartz' opinion (sic) the clamant requires a cane is not supported by substantial evidence and assigns this portion of his opinion little weight.

(Id. at 34-35.)

The opinions of a treating physician, an examining physician based on independent clinical findings, and the opinions of two non-examining physicians that are consistent with the opinions of an examining and treating physician, constitute substantial evidence.[5]  See generally Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (opinion of examining physician "based

---

[5]  Defendant concedes that there was at least "conflicting evidence concerning Plaintiff's need to utilize a cane[.]"  (Def.'s MSJ (ECF No. 23) at 9.)

on independent clinical findings . . . may itself be substantial evidence"). Moreover, the ALJ's analysis provides no citations to an administrative record that spans over 3,100 pages in support of the ALJ's findings.

With respect to the ALJ's reference above to the "two neurologists" who examined plaintiff "on three occasions," it appears neurologist Dr. Leo Chen did examine plaintiff on February 18, 2016, and April 26, 2016.[6] (Tr. at 35, 1804-08, 2901-04.) Although Dr. Chen failed to find "any clear objective issues based on testing results" as noted by the ALJ, that is not the same as opining that plaintiff does not require the use of a cane. (Id. at 2904.) Nor does the ALJ explain why Dr. Chen's opinion is entitled to more weight that the opinion of a treating physician.

For the reasons stated above, the court finds that the ALJ failed to offer specific and legitimate, let alone clear and convincing, reasons supported by substantial evidence for rejecting the treating and examining physicians' opinions that plaintiff required the use of a cane.

B.     Dr. Michelina Regazzi

On April 19, 2016, plaintiff was examined by Dr. Michelina Regazzi, Ph. D.[7] (Id. at 1842-46.) Dr. Regazzi's examination resulted in the following diagnostic impression:

> Claimant appears to have a history of mood dysregulation since childhood, with persistent irritable or angry mood and recurrent, severe temper outbursts. Claimant's reported history of severe childhood trauma likely contributed to the development of his mood dysregulation and then subsequent bipolar disorder. Claimant has a history of impulsive behavior, anger control problems, recurrent suicidal and homicidal thoughts, and auditory hallucinations. He is under the care of a psychiatrist and has reportedly had a recent change in his medication regime. During today's exam he exhibited symptoms of mania, with loud, pressured speech and irritable mood. He would benefit from regular, ongoing contact with a psychiatrist and resumption of mood stabilizer. He might also benefit from

---

[6] It appears that Dr. Daniel Philip Lavery may be the other neurologist cryptically referred to by the ALJ. Dr. Lavery did examine plaintiff on January 19, 2016. (Tr. at 1763-64.) Although Dr. Lavery found "no objective deficits to support [plaintiff's] subjective complaints," Dr. Lavery also stated that plaintiff's "symptoms could theoretically be explained by lumbar pathology," and that "[o]verall, I agree that fibromyalgia fits his symptoms the best." (Id.) As is true of Dr. Chen's opinions, Dr. Lavery did not opine that plaintiff did not require the use of a cane.

[7] "We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(c)(5).

7

1    participation in individual psychotherapy to more thoroughly address
     his symptoms.
2

3    (Id. at 1845.)  Thereafter, Dr. Regazzi opined, in relevant part, that plaintiff was moderately

4    limited in the ability to perform work activities on a consistent basis and accept instructions from

5    supervisors.  (Id. at 1846.)  Plaintiff was also markedly limited in the ability to complete a normal

6    workday or workweek, interact with coworkers and the public, and in the ability to deal with the

7    usual stresses encountered in a competitive work environment.  (Id.)

8         Although the ALJ acknowledged that Dr. Regazzi was "an examining psychologist whose

9    opinion is generally given more weight," the ALJ afforded Dr. Regazzi's opinion "little weight."

10   (Id. at 35.)  In support of this determination, the ALJ asserted that Dr. Regazzi's opinion seemed

11   "heavily weighted on the claimant's subjective reports as she found that although he was irritable,

12   he had intact concentration, was alert, oriented, and cooperative.  His thought processes were

13   linear."  (Id.)

14        At the outset, it must be acknowledged that "[p]sychiatric evaluations may appear

15   subjective, especially compared to evaluation in other medical fields.  Diagnoses will always

16   depend in part on the patient's self-report, as well as on the clinician's observations of the patient.

17   But such is the nature of psychiatry."  Buck v. Berryhill, 869 F.3d 1040, 1049 (9th Cir. 2017); see

18   also Poulin v. Bowen, 817 F.2d 865, 873 (D.C. Cir. 1987) ("unlike a broken arm, a mind cannot

19   be x-rayed").  Dr. Regazzi's opinion, however, was based on "the results of the requested mental

20   status exam and clinical interview, including personal history and accompanying documents[.]"

21   (Tr. at 1846.)

22        The ALJ's reliance on Dr. Regazzi's findings related to plaintiff's concentration,

23   orientation, cooperation, etc., is also misplaced.  Dr. Regazzi found that plaintiff's impairments

24   primarily concerned the ability to complete a normal workday without interruptions from

25   plaintiff's psychiatric condition, interact with coworkers and the public, and deal with the usual

26   stresses encountered in a competitive work environment.  (Id.)  There is nothing inconsistent

27   about a patient being orientated, cooperative with a physician, and capable of concentration, but

28   unable to deal with the public or stresses associated with competitive work.

                                          8

1    The ALJ went on to state:

2        [Plaintiff] did report hallucinations and his memory was poor on
         testing, however, mental health records from September 2015 to
3        April 2015 indicate he participated in an IOP program and improved
         despite that his psychiatrist, noted he minimized his improvement in
4        her reports to her. He planned a Halloween party to which he invited
         50 friends. This would have required concentration and memory
5        skills in excess of what Dr. Regazzi opined. He was also binge
         drinking which affected his presentation and, when asked to stop, he
6        indicated he would stop after he had consumed all the alcohol he
         purchased. Thus, the undersigned finds the medical evidence of
7        record supports the claimant is more functional than Dr. Regazzi
         opined and assigns her opinion little weight.
8

9    (Id. at 35.)

10        There are several problems with the ALJ's above reasoning. First, it is entirely unclear

11   why the ALJ believes planning a Halloween party with 50 friends requires a certain degree of

12   concentration and memory skills. Second, again the thrust of Dr. Regazzi's opinion was not that

13   plaintiff had difficulties with concentration or memory, but instead difficulties in dealing with

14   stresses from competitive work, coworkers, the public, etc.

15        Third, the ALJ's decision explains elsewhere that the Halloween party was in October of

16   2015, and the binge drinking was reported on December 1, 2015, after plaintiff "reported binge

17   drinking left over alcohol from his Halloween party." (Id. at 30.) In this regard, the September

18   2015 to April 2015 mental health records, the planning of the October 2015 Halloween party, and

19   the resulting binge drinking reported in December of 2015, all occurred well before Dr. Regazzi's

20   April 19, 2016 examination and opinion.

21        For the reasons stated above, the court finds that the ALJ failed to provide specific and

22   legitimate, let alone clear and convincing, reasons for discrediting Dr. Regazzi's opinion.

23   Accordingly, plaintiff is entitled to summary judgment on the claim that the ALJ's treatment of

24   the medical opinion evidence constituted error.[8]

25   ////

26   ───────────────────────
     [8] Plaintiff's motion also makes an argument about the ALJ's "reasons for giving nonexaminers
27   great weight." (Pl.'s MSJ (ECF No. 19) at 12.) The court is unable to decipher plaintiff's
     argument. Nonetheless, above the court has found that the ALJ's treatment of the medical
28   opinion evidence constituted error.

                                              9

II.     Plaintiff's Subjective Testimony

The Ninth Circuit has summarized the ALJ's task with respect to assessing a claimant's credibility as follows:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so[.]

Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations and quotation marks omitted). "The clear and convincing standard is the most demanding required in Social Security cases." Moore v. Commissioner of Social Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking[.]" Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints."[9] Valentine v. Commissioner Social Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's]

---

[9] In March 2016, Social Security Ruling ("SSR") 16-3p went into effect. "This ruling makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after the ALJ finds that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms,' and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness." Trevizo v. Berryhill, 871 F.3d 664, 679 (9th Cir. 2017) (quoting SSR 16-3p) (alterations omitted).

1  testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work

2  record, and testimony from physicians and third parties concerning the nature, severity, and effect

3  of the symptoms of which [claimant] complains." Thomas v. Barnhart, 278 F.3d 947, 958-59

4  (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792

5  (9th Cir. 1997)).  If the ALJ's credibility finding is supported by substantial evidence in the

6  record, the court "may not engage in second-guessing."  Id.

7         Here, the ALJ summarized plaintiff's testimony regarding plaintiff's numerous

8  impairments.  (Tr. at 25-26.)  The ALJ then found that plaintiff's medically determinable

9  impairments could reasonably be expected to cause the symptoms alleged, but that plaintiff's

10  statements concerning the intensity, persistence and limiting effects of those symptoms were "not

11  entirely consistent with the medical evidence and other evidence in the record for the reasons

12  explained in this decision."  (Id. at 26) (emphasis added).

13         The ALJ's decision provides no additional specificity as to why plaintiff's testimony

14  should have been discredited.  Instead, it launches into a discussion of medical records, opinion

15  evidence, and third-party statements that spans over 10 pages.  (Id. at 26-37.)  Defendant attempts

16  to use the complete absence of specificity against plaintiff by asserting that plaintiff "has failed to

17  argue with specificity any alleged error by the ALJ in assessing the consistency of his subjective

18  complaints."  (Def.'s MSJ (ECF No. 23) at 14.)  Defendant, however, is likewise unable to

19  support the ALJ's finding with specific argument.  In fact, defendant does not cite to the ALJ

20  decision in arguing this issue.

21         That is because the ALJ's decision is devoid of specificity with respect to the discussion

22  of the treatment of plaintiff's subjective testimony.  It may be that the ALJ intended for the

23  lengthy discussion of the medical records and opinions to allow one to infer a basis for the ALJ's

24  decision to discredit plaintiff's testimony.  However, the court may not speculate as to the ALJ's

25  findings or the basis of the ALJ's unexplained conclusions.  See Bray v. Commissioner of Social

26  Security Admin., 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of

27  administrative law require us to review the ALJ's decision based on the reasoning and factual

28  findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the

adjudicator may have been thinking."). Moreover, as has been said with respect to briefs filed by lawyers, "[j]udges are not like pigs, hunting for truffles buried in" decisions of the ALJ. U.S. v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991).

Absent evidence of malingering, the ALJ was required to provide a specific, clear and convincing reason for rejecting plaintiff's testimony. The ALJ provided no reason. Accordingly, for the reasons stated above, the court finds that the ALJ failed to offer a clear and convincing reason for rejecting plaintiff's testimony. Plaintiff, therefore, is also entitled to summary judgment on the claim that the ALJ's treatment of plaintiff's subjective testimony constituted error.

CONCLUSION

After having found error, "'[t]he decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court.'" Trevizo v. Berryhill, 871 F.3d 664, 682 (9th Cir. 2017) (quoting Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987)). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Garrison, 759 F.3d at 1020. Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Id. at 1021; see also Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); Treichler v. Commissioner of Social Sec. Admin., 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

1           Here, although the record is certainly well developed it is not certain and unambiguous.

2 The ALJ's error do not aid the search for clarity. In this regard, the court cannot say that further

3 administrative proceedings would serve no useful purpose. This matter will, therefore, be

4 remanded for further proceedings consistent with this order.

5           Accordingly, IT IS HEREBY ORDERED that:

6         1. Plaintiff's motion for summary judgment (ECF No. 19) is granted;

7         2. Defendant's cross-motion for summary judgment (ECF No. 23) is denied;

8         3. The Commissioner's decision is reversed;

9         4. This matter is remanded for further proceedings consistent with this order; and

10         5. The Clerk of the Court shall enter judgment for plaintiff, and close this case.

11

12 Dated: September 14, 2018

13

14                         DEBORAH BARNES

15                         UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20

21

22 DLB:6
DB\orders\orders.soc sec\bardin0963.ord

23

24

25

26

27

28